UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

FRANCIS D. TRIONFI            Case No. 15-31953-dof
and SALLY A. TRIONFI,         Chapter 13 Proceeding
    Debtors.                  Hon. Daniel S. Opperman
_____/

OPINION REGARDING FOURTH
POST-CONFIRMATION APPLICATION FOR ATTORNEY FEES

Introduction

Debtors' counsel filed their Fourth Post-Confirmation Application for Attorney Fees ("Application") requesting $5,023.50 of fees and $79.69 for expenses. The Chapter 13 Trustee filed an Objection to these fees, as did the Debtors. After reviewing the Application, the Objections, and hearing arguments of counsel and Ms. Trionfi, who appeared in open Court, the Court issues this Opinion awarding fees of $3,668.18 and expenses of $79.69.

Findings of Fact

The Debtors filed a Chapter 13 petition with this Court on August 11, 2015, and their Chapter 13 Plan was confirmed on October 14, 2015. On that date, the Court awarded attorney fees of $3,500.00. Since the October 14, 2015 Order Confirming Plan, Debtors' counsel has submitted three applications awarding $2,174.70 for a total compensation award of $5,674.70. The instant Application requests an additional $5,023.50 for the time period of March 1, 2017 through September 9, 2017.

1

The Summary of Services attached to the Application discloses that Debtors' counsel was very active in representing the Debtors in connection with numerous issues, including the retention of an attorney to continue Ms. Trionfi's civil action, as well as negotiating settlement of exemption issues and payment by the Debtors to the Chapter 13 Trustee of amounts owed. As a sign of the times, the services referenced at least 56 emails between Debtors' counsel and the Debtors, the Trustee, and other counsel. Debtors' counsel charged for some of these emails and in other instances did not. The entries disclose at least 24 different text messages between Debtors' counsel and the Debtors, with September 7, 2017 being a particularly busy day with 20 text messages by Debtors' counsel at the request of the Debtors.

Although not specifically stated as such or argued on October 17, 2017, the major issue regarding the services rendered was in connection with the lawsuit of Ms. Trionfi that resulted in payment to her for injuries suffered. Although a settlement was never approved by this Court, a pleading filed in connection with the Application to Employ Counsel suggests that Ms. Trionfi settled her lawsuit in the amount of $75,000.00, paid attorney fees and expenses totaling $31,979.14, paid miscellaneous fees of $881.88 and then repaid a pre-settlement loan of $18,880.00 for a final amount paid to her of $23,258.98. The Chapter 13 Trustee objected to the employment of counsel and also filed a Plan Modification increasing payments from $1,732.00 to $3,008.00 given disposable income the Trustee believed he discovered. Debtors' bankruptcy counsel responded to the proposed Plan Modification, filed amendments to Schedules, and then negotiated a plan payment of $2,032.32, much less than the $3,008.00 sought by the Trustee. Shortly thereafter, the Debtors, acting on their own, filed a request to dismiss this case and the case was dismissed on September 13, 2017. A few days later, Debtors' counsel filed the instant Application.

2

Ms. Trionfi suffers from various medical ailments that cause her great pain, discomfort, and affects her ability to speak and complete her thoughts. Accordingly, Ms. Trionfi has submitted certain papers with the Court, but also stated in open Court that she was generally dissatisfied with the level of service given to her and her husband in this Chapter 13, even questioning whether it was appropriate for them to file a Chapter 13, as opposed to a Chapter 7 petition. Ms. Trionfi argues that the money that she received from her lawsuit is needed in order for her to save her house, stabilize her precarious health, and to allow the Debtors to maintain their modest lifestyle. Also of particular interest to Ms. Trionfi is the care of her daughter and grandson who depend upon the Debtors for support as well. As urged by Ms. Trionfi, Debtors' counsel has already been paid more money than she thought appropriate and that no additional fees should be awarded. Ms. Trionfi argues that the total amount of fees paid to her attorney is far in excess of what would be expected in a routine Chapter 13 case where all the Debtors thought they wanted to do was save their house that was worth approximately $125,000.00 and keep their vehicles.

The Chapter 13 Trustee objects to the award of fees of 3 hours incurred as a result of Debtors' counsel waiting for the Debtors to appear to sign certain papers. This amount totals $765.00 and Debtors' counsel conceded that adjustment on October 17, 2017. Also, the Chapter 13 Trustee objects to the time spent preparing the Application of 1.5 hours, or $382.50, and argues that the amount should be 5% of the fee application, or $195.71, a number that Debtors' counsel agrees to as well.

Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).

The issues in this matter arise from Title 11 of the United States Code and do not involve any matter which limits this Court's jurisdiction.

Applicable Law

11 U.S.C. § 330(a)(3) provides, in relevant part:

> In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including–
>
> > (A) the time spent on such services;
> >
> > (B) the rates charged for such services;
> >
> > (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> >
> > (D) whether the services where performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue, or task addressed;
> >
> > (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> >
> > (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(4) prohibits the Court from allowing compensation for:

> (i) unnecessary duplication of services; or
>
> (ii) services that were not–

(I) reasonably likely to benefit the debtor's estate; or

(II) necessary to the administration of the case.

The lodestar method is to be utilized in awarding fees under Section 330. *Boddy v. United States Bankruptcy Court, Western District of Kentucky (In re Boddy)*, 950 F.2d 334 (6th Cir. 1991). The lodestar method of fee calculation multiplies the attorney's reasonable hourly rate by the number of hours reasonably expended. *Id*. at 337. The *Boddy* Court further held:

> The bankruptcy court also may exercise its discretion to consider other factors such as the novelty and difficulty of the issues, the special skills of counsel, the results obtained, and whether the fee awarded is commensurate with fees for similar professional services in non-bankruptcy cases in the local area. In many cases, these factors will be duplicative if the court first determines the lodestar amount because the lodestar presumably subsumes all of these factors in its analysis of the *reasonable* hourly rate and the *reasonable* hours worked.

*Id*. at 338 (citations omitted).

Per *Boddy*, a "court can legitimately take into account the typical compensation that is adequate for attorney fees in Chapter 13 cases, as long as it expressly discusses these factors in light of the reasonable hours actually worked and a reasonable hourly rate." *Id.*

The professional requesting compensation has the burden of proof regarding the application for compensation. *In re Sharp*, 367 B.R. 582, 585 (Bankr. E.D. Mich. 2007); *In re New Boston Coke Corp.*, 299 B.R. 432 (Bankr. E.D. Mich. 2003).

Analysis

The *Boddy* analysis requires the Court to consider the number of hours and the hourly rate. There has been no objection to the hourly rate in this case, so this component of *Boddy* is not in issue. Instead, the Court must analyze this case as to the time expended to determine whether the requested compensation is reasonable as allowed by *Boddy* in Section 330.

5

Initially, the Court accepts the conceded reductions of $765.00 with the readjustment of the fees allowed for the Application to $195.71. The larger issue that the Court must grapple with, however, is whether further reductions are appropriate.

The Court notes that there are at least 11 entries in which Debtors' counsel has identified services, but also indicated that no actual dollars are charged for those services. This is strong evidence that counsel has exercised some billing discretion in recognition that the fees must be commensurate with the nature of the case. In many of these instances, the services were indeed regarding emails sent or received. There are, however, a number of entries where emails were charged at the rate of .1 hour per email. Without reviewing each email, it is difficult for the Court to ascertain whether this was a reasonable or unreasonable charge.

Taken against the backdrop of assumption that this is a routine Chapter 13 case, the requested fees, which are close to $10,000.00, seem extremely high given the amount of assets of the Debtors and their desire to retain ownership of those assets. But, the assumption that this is a routine Chapter 13 case is not necessarily true here. First, Ms. Trionfi suffers from medical conditions that make communication more challenging, thus requiring more and different methods to communicate. Second, her lawsuit adds more complexity to the routineness of this case. For example, additional steps were needed to hire and retain counsel to continue her lawsuit and it appears that did not occur until the lawsuit was near resolution. Also, certain issues arose as to the exemption that could be claimed by Ms. Trionfi, as well as the increase in payments that would be necessary given her extra income. As near as the Court can tell from the pleadings, Debtors' counsel expertly navigated these matters and drastically reduced the amount that the Debtors would need to pay to a Chapter 13 Trustee. Being dissatisfied with that result, however, the Debtors elected, as is their right, to dismiss this case.

6

Moreover, it is clear that by March 2017 the Debtors no longer wished to really interact on a face-to-face basis with their attorney. While this causes more complications, the alternative to either email or text messaging, which apparently was the preferred method of the Debtors during the end of this period, are either face-to-face meetings or telephone conferences. With this record, the Court cannot tell with any certainty whether the Debtors would have been better served with such meetings or with the emails used by their attorney. Also, it is apparent from Ms. Trionfi's discussions in Court that she requires additional time to comprehend and then respond to matters. However unfair or unfortunate, this by its very nature takes additional time for counsel to communicate and, while regrettable, can lead to frustration on all sides.

After close consideration of the Statement of Services, the Court concludes that no adjustment is appropriate until August 1, 2017, at the earliest. By that time, it appears that the settlement of the lawsuit was close to completion and that the number of entries accelerated throughout August and early September 2017. The emails jump from 1 or 2 per day to 7 on August 29, 2017, and then evolved to text messages, the most notable being 20 separate text messages on September 7, 2017, with 4 additional text messages on September 9, 2017. By this time, the Court concludes that the numerous emails were not effective and that counsel should have considered a different method to communicate with the Debtors. Most notable are the August 29, 2017, September 5, 2017, September 7, 2017, and September 9, 2017 entries that should be adjusted to reduce these entries by 1.5 hours or $382.50. Otherwise, the remaining entries are appropriate as required by *Boddy* and Section 330.

Accordingly, the Court reduces the fees requested by counsel as follows:

| | | |
|---|---|---|
| Total fees requested, not including time spent for fee application preparation: | | $4,641.00 |
| Less: 3 hours per Trustee's Objection: | | ($765.00) |
| Less: Court's reduction: | | ($382.50) |
| | | $3,493.50 |
| Add: 5% of $3,493.50 for allowed fee application preparation: | | $174.68 |
| **Total fees awarded:** | | **$3,668.18** |

Accordingly, the Court awards fees of $3,668.18 and costs and expenses of $79.69.

**Not for Publication**

cc: Francis and Sally Trionfi

**Signed on October 24, 2017**



/s/ Daniel S. Opperman
**Daniel S. Opperman**
**United States Bankruptcy Judge**